1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

ROBERT E. DOWD,

12

        Plaintiff,

13

    v.

14

COUNTY OF KERN, et al.,

15
16

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:12-cv-01063 - LJO - JLT

ORDER GRANTING PLAINTIFF'S MOTION TO
PROCEED IN FORMA PAUPERIS

(Doc. 2)

ORDER DISMISSING THE COMPLAINT WITH
LEAVE TO AMEND

17

      Robert Dowd ("Plaintiff") seeks to proceed *pro se* in this action initiated on June 29, 2012.

18

Pending before the Court is Plaintiff's complaint for screening (Doc. 1), and the motion to proceed *in*

19

*forma pauperis* (Doc. 2). For the followings reasons, Plaintiff's complaint is **DISMISSED WITH**

20

**LEAVE TO AMEND**, and the motion to proceed *in forma pauperis* is **GRANTED**.

21

**I.     MOTION TO PROCEED IN FORMA PAUPERIS**

22

      As a general rule, all parties instituting any civil action, suit or proceeding in a United States

23

District Court must pay a filing fee. 28 U.S.C. § 1914(a). However, the Court may authorize the

24

commencement of an action "without prepayment of fees and costs of security therefor, by a person

25

who submits an affidavit that . . . the person is unable to pay such fees or give security therefor." 28

26

U.S.C. § 1915(a)(1). Therefore, an action may proceed despite a failure to prepay the filing fee only if

27

leave to proceed *in forma pauperis* ("IFP") is granted by the Court. *See Rodriguez v. Cook*, 169 F.3d

28

1178, 1177 (9th Cir. 1999). The Court has reviewed the application and has determined that it

1   satisfies the requirements of 28 U.S.C. § 1915(a).  Therefore, Plaintiff's motion to proceed *in forma*

2   *pauperis* is **GRANTED**.

3   **II.     SCREENING REQUIREMENT**

4          When an individual seeks to proceed *in forma pauperis*, the Court is required to review the

5   complaint and identify "cognizable claims."  *See* 28 U.S.C § 1915(a)-(b).  The Court must dismiss a

6   complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which

7   relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."

8   28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).  A claim is frivolous "when the facts alleged rise to the

9   level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts

10  available to contradict them."  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

11  **III.    PLEADING STANDARDS**

12         General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A

13  pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short

14  and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the

15  relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P.

16  8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less

17  stringent standards."  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

18         A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and

19  succinct manner.  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The

20  purpose of the complaint is to give the defendant fair notice and the grounds upon which the complaint

21  stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

22          Rule 8 does not require detailed factual allegations, but it demands more than an
23          unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers
            labels and conclusions or a formulaic recitation of the elements of a cause of action will
24          not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further
            factual enhancement.
25

26  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

27  Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d

28  266, 268 (9th Cir. 1982).  The Court clarified further,

1

2

3

4

5

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

6   *Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When factual allegations are well-pled, a court should

7   assume their truth and determine whether the facts would make the plaintiff entitled to relief;

8   conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*  The Court may grant

9   leave to amend a complaint to the extent that deficiencies of the complaint can be cured by an

10  amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

11  **IV.    PLAINTIFF'S ALLEGATIONS**

12          Plaintiff reports he was arrested by a member of the Kern County Sheriff's Department in May

13  2009.  (Doc. 1 at 6).  According to Plaintiff, he was held in custody while the Deputy who arrested

14  him spoke with a superior officer, Sgt. Scott Jelletech.  *Id.*  Plaintiff contends he heard Sgt. Jelletech

15  say, "We cannot justify what we have done." *Id.*  Thereafter, Plaintiff was released from custody.  *Id.*

16          Plaintiff alleges he was approached by a representative of Kern County Animal Control

17  ("Animal Control") in January 2010, and was informed there had been reports about the condition of

18  his dog "Taft."  (Doc. 1 at 8).  The Animal Control officer and Plaintiff agreed to have Taft evaluated

19  by a veterinarian, and on February 26, 2010, Dr. Bryan Jensen completed an evaluation.  *Id.*  Dr.

20  Jensen reported he discussed euthanasia with Plaintiff, which was declined.  *Id.* at 34.  Dr. Jensen

21  opined: "The owner takes care of the dog, but he's not healthy, is happy.  Neglect?  Probably not.  No

22  sign of abuse.  Dog would be a good candidate for a cart."  *Id.*

23          Plaintiff alleges he was approached by Jayson Smith, a representative Animal Control

24  regarding Taft on June 30, 2010.  (Doc. 1 at 9).  Mr. Smith informed Plaintiff he had not received the

25  report of Dr. Jensen.  *Id.*  As a result, Plaintiff alleges a copy of the report was delivered to Kern

26  County Animal Control Shelter that day.  *Id.*  However, on July 1, 2010, Mr. Smith returned to the

27  property.  *Id.*  According to Plaintiff, Mr. Smith contacted the Kern County Sheriff's Department, and

28  Deputy Jaime Alarcon arrived in response to Mr. Smith's call.  *Id.* at 10.  At the time Deputy Alarcon

3

arrived, Plaintiff contends he was cutting vegetables and had "a short $.50 metallic butterknife with a rounded point in his right hand which [sic] the short width blade approximately 3 and one half inches long." *Id.*  Plaintiff reports that as he approached the deputy, "the officer ordered [him] to drop the knife" and he did so. *Id.* at 10.  Plaintiff asserts defendants Scott Jellitech and Sgt. Metter arrived after he was ordered to drop the knife. *Id.* The officers arrested Plaintiff for "assault with a deadly weapon, animal cruelty and disobedience of a peace officer in the performance of his duties." *Id.*

According to Plaintiff, the officers "knew or should have known" Plaintiff had not abused Taft, had not assaulted an officer with a deadly weapon, and "that in failing to produce his driver's license he had not interfered with a peace officer in the performance of his duties." (Doc 1 at 11).  However, Plaintiff was convicted of a violation of California Penal Code Section 148,[1] and fined $100. *Id.* at 12.

Plaintiff contends the State Bar of California ("State Bar") and Kern County District Attorney's Office communicated throughout "the time [Plaintiff] was waiting and preparing for the trial." (Doc. 1 at 23).  Plaintiff reports, the State Bar was "activity and aggressively participating in this act to terminate [his] right to practice law, by virtue of the 2009 and then the 2010 arrest then charges for criminal conduct and because [his] approach to practice of law was that justice should not cost . . ." *Id.* at 24.

In May 2010, Plaintiff "learned that he would be charged with misconduct" by the State Bar due to a signature that appeared upon a declaration he filed in a civil action.  (Doc. 1 at 20).  Plaintiff explained that in 2007, he filed a declaration that bore his name on a signature line, but was signed his assistant. *Id.*  Although Plaintiff "informed the court that the signature was made with his direct authority," the declaration was stricken because he had not, in fact, been the one to sign. *Id.*  Plaintiff asserts Judge Donald F. Miles presided over the trial before the State Bar proceedings, and issued an opinion, finding Plaintiff "did intend to deceive a judge." *Id.* at 21.  Plaintiff contends Judges Miles failed "to consider and follow the law," and analogized Plaintiff's case to those "which were factually dissimilar." *Id.*  Plaintiff asserts Judge Miles adopted the recommendation of the State Bar of a suspension of 90 days. *Id.* at 22.

---

[1] Cal. Pen. Code § 148 governs actions which qualify as resisting officers in discharge of their duties.

1   The ruling of Judge Miles was affirmed by the State Bar Appellate Court.  (Doc. 1 at 30).  In

2   addition, Plaintiff asserts "the State Bar was awarded costs of $13,000.00," and the costs must be paid

3   before he may return to the practice of law.  *Id.*  Plaintiff reports that his right to practice law was

4   terminated in November 2011.  *Id.*

5   **V.     DISCUSSION AND ANALYSIS**

6          Based upon the above facts, Plaintiff alleges violations of his civil rights, unlawful and

7   malicious arrest, malicious prosecution, conspiracy, and intentional infliction of emotional distress.

8   (Doc. 1 at 27-32).  In addition, Plaintiff states the action is brought pursuant to 42 U.S.C. § 1983, for

9   defendants' "refusing or neglecting to prevent the abuse by supervisors." *Id.* at 2.  Plaintiff identifies

10  the following defendants in the action: Kern County; Kern County Sheriff's Department; Kern County

11  Animal Control; Jayson Smith; Deputy Sheriff Jaime Alarcon; Sheriff Sergeant Scott Jelletic; Sherriff

12  Sergeant Mettler; the California State Bar; Jean Cha; Donald F. Miles, Judge for the California State

13  Bar Court; P.J. Remke, California State Bar Appellate Justice; and J. Epstein, California State Bar

14  Appellate Justice; a "John Doe" attorney for the California State Bar; and several other "Doe"

15  defendants (collectively, "Defendants").  (Doc. 1 at 1).

16         **A.     Civil Rights Violations and 42 U.S.C. § 1983**

17         As his first cause of action, Plaintiff states "all defendants" have violated his civil rights.  (Doc.

18  1 at 27).  Specifically, Plaintiff contends Defendants violated his rights under the First, Fifth, Eighth,

19  Ninth, and Fourteenth Amendments of the Constitution.  *Id.* at 2.  Notably, the amendments do not

20  create direct causes of action. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 929 (9th

21  Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause

22  of action under the United States Constitution").  However, 42 U.S.C. § 1983 ("Section 1983") "is a

23  method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271

24  (1994).  Thus, an individual may bring an action for the deprivation of civil rights pursuant to Section

25  1983, which states in relevant part:

26         Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
           any State or Territory... subjects, or causes to be subjected, any citizen of the United
27         States or other person within the jurisdiction thereof to the deprivation of any rights,
           privileges, or immunities secured by the Constitution and laws, shall be liable to the party
28         injured in an action at law, suit in equity, or other proper proceeding for redress…

5

42 U.S.C. § 1983.  To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 U.S. Dist. LEXIS 53946, at *3 (E.D. Cal. Apr. 17, 2012).  An entity or individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In other words, "[s]ome culpable action or in action must be attributable to defendants."  *See Puckett v. Cororan Prison- CDCR*, 2012 U.S. Dist. LEXIS 52572, at *7 (E.D. Cal. Apr. 13, 2012).

### 1.        Eleventh Amendment Immunity

The Eleventh Amendment provides: "The Judicial power the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  *U.S. Constitution, amend. XI*.  Therefore, the Eleventh Amendment prohibits federal jurisdiction over claims against a state, unless the state has consented to suit.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

Immunity under the Eleventh Amendment may apply to officials of a state because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Supreme Court opined, "Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted).

6

### a.    The State Bar

The California Supreme Court explained, "The State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function."  *In re Rose*, 22 Cal. 4th 430, 438 (2000) (citing Cal. Constitution, Art. VI, § 9).  It is "a public corporation" created "as an administrative arm of [the California Supreme Court] for the purpose of assisting in matters of admission and discipline of attorneys."  *Id.*  However, the Ninth Circuit has determined that Eleventh Amendment immunity applies to suits for damages brought against the California State Bar and its employees acting in their official capacity.  *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from stage agencies such as California's Bar Association and Bar Court"); *see also Lupert v. California State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985).

The State Bar's status as an entity entitled to Eleventh Amendment immunity is a matter of law that cannot be overcome by factual allegations.  *Wu v. State Bar of California*, 953 F. Supp. 315, 319 (C.D. Cal. 1997).  Accordingly, the State Bar is not amenable to suit, and the claims for violations of civil rights by the State Bar are **DISMISSED**.

### b.    State Bar Court Judges

Plaintiff asserts Judge Miles, Justice Remke, and Justice Epstein violated his civil rights through the proceedings of the State Bar Court.  However, as employees of the State Bar, Eleventh Amendment Immunity extends to these defendants to the extent they are sued in their official capacities.  *See Will*, 491 U.S. at 71.

Moreover, these defendants are entitled to judicial immunity.  "Judges and those performing judge-like functions are absolutely immune for damage liability for acts performed in their official capacities."  *Ashelman v. Pope*, 739 F.2d 1072, 1075 (9th Cir. 1986) (citing *Richardson v. Koshiba*, 692 F.2d 911, 913 (9th Cir. 1982)).  The Ninth Circuit explained this immunity applies to State Bar judges because "hearings are adversarial, errors are correctable on appeal, the judges make factual findings and perform other adjudicatory functions, and Bar Court decisions are controversial enough to stimulate harassing damage actions against the adjudicators."  *Hirsch*, 67 F.3d at 715.  Therefore,

when allegations relate to actions taken in disciplinary proceedings, the State Bar judges and justices are entitled to judicial immunity. *Id.* Here, Plaintiff alleges Judge Miles, Justice Remke, and Justice Epstein violated his civil rights by suspending his license to practice law and ordering the payment of costs in relation to the proceedings. These decisions were "acts performed in [the defendants'] official capacities." *See Ashelman*, 739 F.2d at 1075.

Accordingly, Judge Miles, Justice Remke, and Justice Remke are entitled to both Eleventh Amendment immunity and judicial immunity, and the claims for violations of civil rights pursuant to Section 1983 as to these defendants are **DISMISSED**.

c.     State Bar Prosecutors

Plaintiff seeks damages for civil rights violations by Jean Cha, a prosecutor for the State Bar, and "John Doe Attorney," who is the supervisor of Ms. Cha. (Doc. 1 at 1, 4). Notably, Eleventh Amendment immunity extends to prosecutors for the State Bar who are sued in their official capacity. *Hirsh*, 67 F.3d at 715; *see also Clark v. State of Washington* 366 F.2d 678, 681 (9th Cir. 1966) (holding that Bar Association prosecuting attorney was entitled to immunity). Further, the State Bar prosecutors enjoy "quasi-judicial immunity from monetary damages." *Hirsh*, 67 F.3d at 715; *Imblerv. Pachtman*, 424 U.S. 409, 430-31 (immunity extends to protect a prosecutor acting within his or her authority and in a quasi-judicial capacity).

Here, Plaintiff alleges the civil rights violations by Ms. Cha and John Doe Attorney for the prosecution of his disciplinary proceeding before the State Bar. The actions taken by the prosecutors were in the course of their official capacities. Accordingly, the claims for civil rights violations by Jean Cha and John Doe Attorney are **DISMISSED**.

**2.     Liability of Kern County Sheriff's Department**

Municipalities or other governmental bodies may be sued as a "person" under Section 1983 for the deprivation of federal rights. *Monell, Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the Ninth Circuit has determined "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005). In *Morris v. State Bar*, the Court considered whether the City of Fresno Fire Department was amenable to suit and held:

> Municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995). Other types of governmental associations are only subject to suit under Section 1983 if the parties that created them intended to create a separate legal entity. *Hervey*, 65 F.3d at 792 (intergovernmental narcotics team is not subject to suit). *See also Sanders v. Aranas*, 2008 U.S. Dist. LEXIS 6402, 2008 WL 268972, 3 (E.D. Cal. 2008) (the Fresno Police Department is not a proper defendant because it is a sub-division of the City of Fresno).
>
> ...The City of Fresno is the proper party because it is the governmental entity considered a "person" under § 1983. The Fresno Fire Department is a "sub-unit" of the City of Fresno and is not a person under § 1983.

*Morris v. State Bar*, 2010 U.S. Dist. LEXIS 36945, at *6-7 (E.D. Cal. Mar. 10, 2010). Notably, several recent decisions in the Eastern District held sheriff and police departments are not "persons" under Section 1983.[2] *See, e.g., Alston v. County of Sacramento*, 2012 U.S. Dist. LEXIS 95494, at *6-7 (E.D. Cal. July 10, 2012); *Hall v. Placer County Sheriff's Dep't*, 2011 U.S. Dist. LEXIS 137552, at *31-32 (E.D. Cal. Nov. 30, 2011); *Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *6 (E.D. Cal. Feb. 2, 2011).  Given its status as a department of Kern County, the Sheriff's Department is not the proper defendant to these claims.  Therefore, the claims for violations of civil rights by Kern County Sheriff's Department are **DISMISSED**

### 3.        Liability of Kern County Animal Control

For Kern County Animal Control to be liable for civil rights violations, it must be a person under Section 1983.  However, the Court has determined an animal control is a department of a municipality. *Jackson v. Placer County*, 2007 U.S. Dist. LEXIS 35436, at *40-41 (E.D. Cal. May 15, 2007).  Consequently, Kern County Animal Control lacks the capacity to be sued under §1983, and is not a proper defendant to Plaintiff's claims.  Rather, the proper defendant is Kern County, also named by the Plaintiff.  Therefore, the claims for violations of civil rights by Kern County Animal Control are **DISMISSED**.

---

[2] Moreover, this rational is followed by other districts within the Ninth Circuit as well. *See, e.g., Vance v. County of Santa Clara*, 928 F. Supp 993, 996 (N.D. Cal. 1996) ("the term 'persons' does not encompass municipal departments."); *Ortega v. Chula Vista Police Dep't*, 2010 U.S. Dist. LEXIS 66960, at *2 (S.D. Cal. June 29, 2010) (the "Chula Vista Police Department lacks capacity to be sued under Section 1983. . .").

### 4.      Municipal Liability of Kern County

Significantly, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). To establish liability, Plaintiff must show: (1) he was deprived of a constitutional right; (2) Kern County had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be demonstrated when:

(1)  A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;

(2)  The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

(3)  An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotations omitted) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992); *accord. Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Here, Plaintiff has not identified

10

1    any policy by the County which caused a deprivation of his civil rights, or alleged the County had

2    actual or constructive notice of any potential harm instituted by its polices.

3           Thus, for municipal liability to be imposed, the complaint must allege sufficient facts to

4    demonstrate that an unconstitutional custom caused Plaintiff harm.  A custom is "a widespread

5    practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of

6    law."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted).

7    Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic

8    incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the

9    conduct has become a traditional method of carrying out that policy."  *Trevino v. Gates*, 99 F.3d 911,

10   918 (9th Cir. 1996).  On the other hand, Plaintiff may establish municipal liability based upon a single

11   event if he demonstrates that the person causing the constitutional injury was a final policymaker for

12   the entity.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("only those municipal

13   officials who have 'final policymaking authority' may by their actions subject the government to §

14   1983 liability").  However, Plaintiff has made no allegations that the County had a custom of violating

15   civil rights.  Moreover, Plaintiff has not plead allegations that any named defendant or any of the

16   unnamed actors had final policymaking authority.  Thus, Plaintiff fails to state a claim against the

17   County of Kern, and the claims for violations of civil rights are **DISMISSED**.

18           **5.     First Amendment**

19           The First Amendment to the United States Constitution provides: "Congress shall make no law

20   respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the

21   freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the

22   Government for a redress of grievances."  *U.S. Constitution, amend. I.*  Accordingly, a number of

23   rights are encompassed within the lines of the First Amendment.

24           Here, Plaintiff fails to identify which rights he believes Defendants violated and the Court will

25   not speculate as to his causes of action. Plaintiff has a burden to state claims with specificity.  *See*

26   *Iqbal,* 129 S.Ct. at 1948-49; *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 554 (2007) (a plaintiff must

27   set forth more than conclusions and include "the grounds of his entitlement to relief").  Thus, Plaintiff

28   has not stated a cognizable claim for a First Amendment violation, and the claim is **DISMISSED**.

### 6.      Fifth Amendment

Plaintiff alleges a violation of his civil rights under the Fifth Amendment.  However, the Fifth Amendment applies only to actions by the federal government. *Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982). There must be a "significantly close nexus" between the federal government and the actor for the Fifth Amendment to apply to nonfederal entities or individuals. *Id.*  Here, Plaintiff has not made any factual allegations regarding Defendants' connections to the federal government.  Thus, Plaintiff has not stated a cognizable claim against Defendants on Fifth Amendment grounds and the complaint, on these grounds, is **DISMISSED**.

### 7.      Eighth Amendment

The Eighth Amendment proscribes a freedom from cruel and unusual punishment. *U.S. Constitution, amend. VIII*. Only after conviction and sentence does the prohibition of cruel and unusual punishment take effect.  *Lee v. City of Los Angeles*, 250 F.3d 668, 868 (9th Cir. 2001). Plaintiff has not alleged facts regarding any cruel or unusual punishment by Defendants, although Plaintiff was convicted of a crime.  Therefore, Plaintiff has not stated a cognizable claim for Eighth Amendment civil rights violations, and the claim is **DISMISSED**.

### 8.      Ninth Amendment

The Ninth Amendment provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  *U.S. Constitution amend. IX*. Other than a general reference to the Ninth Amendment, Plaintiff does not set suggest a legal theory or basis for his claim.  Further, Plaintiff does not allege specific facts showing a violation of the Ninth Amendment.  Thus, Plaintiff's complaint for violation of the Ninth Amendment is **DISMISESD**.

### 9.      Fourteenth Amendment

Plaintiff contends Defendants violated his civil rights by depriving him "of his liberty and his profession and charging him with offenses to which it was agreed could not be charged."  (Doc. 1 at 27).  In addition, Plaintiff asserts he suffered an unlawful and malicious arrest, which deprived him "of his right to liberty without due process of law and his right to equal protection of the laws."  *Id.*  Thus, Plaintiff asserts the defendants violated rights enumerated by the Fourteenth Amendment.

///

a.      Due Process

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." *U.S. Constitution, amend*. XIV §1. This clause guarantees both procedural and substantive due process.  The procedural due process component protects individuals against the deprivation of liberty or property by the government, while substantive due process protects individuals from the arbitrary deprivation of liberty by the government. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

A Section 1983 claim for a violation of procedural due process has three elements: "(1) a liberty or property or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process." *Portman*, 995 F.2d at 904.  Here, it is not clear what liberty or property interest Plaintiff believes was deprived.  From the factual allegations it appears Plaintiff was afforded procedural due process because he was given a trial after his arrest on July 1, 2010.  Furthermore, Plaintiff received an administrative hearing before the State Bar.  As a result, Plaintiff has not stated a cognizable claim for a deprivation of procedural due process.

"In order to establish a constitutional violation based on substantive due process, a plaintiff must show both a deprivation of liberty and conscience-shocking behavior by the government." *Brittain*, 451 F.3d at 991.  In this case, Plaintiff has not alleged facts demonstrating "conscious-shocking" behavior by Defendants.  Accordingly, Plaintiff fails to state a cognizable claim for a denial of substantive due process.

b.      Equal Protection

The Equal Protection Clause states that "no state shall… deny to any person within its jurisdiction the equal protection of the laws." *U.S. Constitution, amend.* XIV §1.  In essence, this commands that all persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff can state a cognizable equal protection claim by alleging "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee*, 250 F.3d at 686.  In the alternative, where the acts in question do not involve a protected class, a plaintiff can establish a "class of one" claim by alleging

he "has been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Even when viewed liberally, Plaintiff's factual allegations fail to state an equal protection

violation. The Complaint summarily states he was deprived of "his right to equal protection of the

laws." (Doc. 1 at 27). However, this conclusion is not sufficient to state a claim. *See Iqbal*, 129 S.Ct.

at 1949; *see also Papasan v. Allain*, 478 U.S. 265, 286 (the court is "not bound to accept as true a legal

conclusion couched as a factual allegation"). Plaintiff does not contend that Defendants discriminated

against him in violation of equal protection rights, or that he was treated differently from other

similarly situated individuals. Therefore, Plaintiff failed to state a cognizable claim for an equal

protection violation.

Because Plaintiff has failed to state cognizable claims for violations of due process or equal

protection, the complaint on Fourteenth Amendment grounds is **DISMISSED**.

### 10.   Failure to Supervise

The supervisor of an individual who allegedly violated a plaintiff's constitutional rights is not

made liable for the violation simply by virtue of that role. *Monell*, 436 U.S. at 691; *Terrell v. Brewer*,

935 F.2d 1015, 1018 (9th Cir. 1991). "A supervisor is only liable for constitutional violations of his

subordinates if the supervisor participated in or directed the violations, or knew of the violations and

failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In addition,

supervisor liability exists "if supervisory officials implement a policy so deficient that the policy itself

is a repudiation of constitutional rights and is the moving force of the constitutional violation."

*Hansen v. Black*, 885, F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04

(5th Cir. 1987) (internal quotation marks omitted). A causal link between a supervisor and the claimed

constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.

1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).

Here, Plaintiff asserts "Sgts. Mettler and Jellitech [sic] . . . knowingly not only supervised the

incident [of his arrest] but . . . knowingly and willfully failed to supervise and control Defendant

Deputy Sheriff." (Doc. 1 at 28). However, Plaintiff has not alleged facts that would support a

determination that the officers had a custom or policy of failing to adequately supervise subordinate

officers.  Moreover, Plaintiff is unable to establish a custom or policy "based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).  As a result, Plaintiff has not stated a cognizable claim against Sgts. Mettler and Jellitech.

Although Plaintiff names defendants Ed Jagles, Deputy Sheriff Alarcon, and Mr. Smith in conjunction with this cause of action (Doc. 1 at 27), Plaintiff has not plead any facts linking these defendants to this cause of action.  Accordingly, Plaintiff is unable to state a cognizable claim against these defendants.  *See Johnson*, 688 F.2d at 743 (a plaintiff must link defendants to the harm alleged); *Fayle*, 607 F.2d at 862.  Therefore, Plaintiff's claim for a failure to supervise under Section 1983 is **DISMISSED**.

### B.    Malicious Prosecution

Plaintiff contends defendants Ed Jagels, Deputy Sheriff Alarcon, Sgt. Jelletich, Sgt. Mettler, and the Kern County District Attorney's Office "instituted the criminal prosecution against [him] with malice."[3]  (Doc. 28 at 48).  Notably, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

To prevail on claim of malicious prosecution, Plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  In addition, Plaintiff must show "the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy*, 368 F.3d at 1069.

Here, Plaintiff has not plead factual allegations that tend to show he was arrested without probable cause.  Significantly, the proceeding after his arrest resulted in a conviction for violation of California Penal Code Section 148.  (Doc. 1 at 12).  Accordingly, Plaintiff is unable to state a cognizable claim for malicious prosecution, and this claim is **DISMISSED**.

---

[3] The Kern County District Attorney's Office is not identified as a defendant on the face of the complaint, but is identified as a party in the body of the complaint.  (Doc. 1 at 5).

**C.      Conspiracy and Failure to Prevent Conspiracy**

Plaintiff contends Defendants engaged in a conspiracy in violation of Section 1985.  A claim of conspiracy requires a plaintiff to "demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights."  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted).  In addition, a plaintiff must show an "actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-42 (9th Cir. 1989).

In this case, Plaintiff asserts Defendants entered "a unified effort to deny [him] of his right to practice law" (Doc. 1 at 30).  However, Plaintiff has not alleged facts demonstrating a meeting of minds amongst Defendants.  Plaintiff fails to meet his burden to identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights."  *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).  In addition, "[t]here is no fundamental right to practice law." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990); *see also Paciulan v. George*, 38 F. Supp. 2d 1128, 1138 (N.D. Cal. 1999) (rejecting the plaintiffs' argument that the right to practice law is "constitutionally protected").  Therefore, Plaintiff has failed to state a cognizable claim for conspiracy, and this cause of action is **DISMISSED**.

Likewise, Plaintiff has not stated a claim for a failure to prevent a conspiracy under Section 1986,[4] because he has not shown such conspiracy existed. *See Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985) ("a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985").  Accordingly, Plaintiff's claim that Defendants violated Section 1986 is **DISMISSED**.

///

---

[4] Although Plaintiff does not state a separate cause of action for a failure to prevent a conspiracy, he asserts Defendants were "subject to" 42 U.S.C. 1986.  (Doc. 1 at 6, ¶ 23)

16

### D.      Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires Plaintiff plead: (1) outrageous conduct by the defendants, (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendants' actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering.  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Brooks v. United States*, 29 F.Supp.2d 613, 617 (N.D. Cal. 1998)). Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'"  *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009) (quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 886, 895, 183 Cal. Rptr. 502 (1982)).  Here, Plaintiff has failed to link Defendants to any outrageous conduct, and has not alleged facts which show a specific intent to cause Plaintiff emotional distress.  Accordingly, Plaintiff has failed to state a cognizable claim for intentional infliction of emotional distress, and this cause of action is **DISMISSED**.

### E.      California Tort Claims Act

Plaintiff raises claims of malicious prosecution and intentional infliction of emotional distress (Doc. 1 at 29-32), which are torts arising under state law.  Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public employee unless he timely filed a notice of tort claim.[5]  Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  Specifically, California Government Code § 945.4 provides,

> No suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . .

Thus, to raise these claims against the County and its employees, Plaintiff must allege compliance with the presentation requirement of the California Tort Claims Act.  *State of California v. Superior*

---

[5] To comply with the California Tort Claims Act, a notice must at a minimum, "identify the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted."  Cal. Gov't Code § 910(c).

*Court*, 32 Cal.4th 1234, 1243-44 (2004); *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861, 865 (Cal. App. 1983).

When a plaintiff fails to allege compliance, it is fatal to the cause of action and results in the dismissal of the state law claim. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969). Here, Plaintiff does not allege that he filed a notice of tort claim prior to the commencement of this action, or that the board acted upon his claim. Thus, Plaintiff has failed to plead facts sufficient to demonstrate his compliance with the California Tort Claims Act. *See State of California*, 32 Cal.4th at 1243.

## G.    *Rooker-Feldman* **Doctrine**

Plaintiff contends he was "wrongly found amenable to discipline by the State Bar." (Doc. 1 at 32.) Therefore, Plaintiff requests the Court "order that he should be immediately reinstated to the practice of law." *Id.*

Although Plaintiff challenges the determination of the State Bar, the ultimate decision to suspend Plaintiff from the practice of law was rendered by the California Supreme Court. The State Bar has limited power and may only make disciplinary recommendations, because the State Bar Court "is not itself a judicial court established by article IV" of the California Constitution. *In re Rose*, 22 Cal. 4th at 438. The California Supreme Court explained:

> The State Bar Court Hearing Department (Hearing Department) conducts evidentiary hearings on the merits in disciplinary matters. (Rules Proc. of State Bar (hereafter, Rules of Procedure), rules 2.60, 3.16.) An attorney charged with misconduct is entitled to receive reasonable notice, to conduct discovery, to have a reasonable opportunity to defend against the charge by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. ([Cal Bus. & Prof. Code] § 6085.) The Hearing Department renders a written decision recommending whether the attorney should be disciplined. (Rules Proc., rule 220.) Any disciplinary decision of the Hearing Department is reviewable by the State Bar Court Review Department (Review Department) at the request of the attorney or the State Bar. (*Id.*, rule 301(a).) In such a review proceeding, the matter is fully briefed, and the parties are given an opportunity for oral argument. (*Id.*, rules 302-304.) The Review Department independently reviews the record, files a written opinion, and may adopt findings, conclusions, and a decision or recommendation at variance with those of the Hearing Department. (*Id.*, rule 305.) A recommendation of suspension or disbarment, and the accompanying record, is transmitted to this court after the State Bar Court's decision becomes final. ([Cal Bus. & Prof. Code] § 6081; Rules Proc., rule 250.)

18

*In re Rose,* 22 Cal. 4th at 439.  Consequently, the recommendations of the State Bar are advisory only. *Id.* at 444. "The final determination rests with [the California Supreme Court], and its powers in that regard are plenary and its judgment conclusive." *Id.* (quoting *In re Lacey,* 11 Cal. 2d 699, 701 (1938)).

Significantly, the California Supreme Court issued an order regarding the recommendation of the State Bar for Plaintiff's disciplinary on October 19, 2011.[6]  Under the *Rooker-Feldman* doctrine, Plaintiff may not seek appellate review in federal court of the disciplinary decision rendered by the state court.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The Ninth Circuit explained,

> Typically, the *Rooker Feldman* doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.

*Doe v. Mann*, 415 F.3d 1038, 1041-42 (9th Cir. 2005).  In addition, a complaint in federal court must be dismissed for lack of subject matter jurisdiction if the "claims raised are . . . 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483, 485.

Therefore, to the extent Plaintiff seeks review of the state court decision to suspend him from practice, this Court lacks jurisdiction to offer relief from the judgment entered by the state. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (The *Rooker-Feldman* doctrine precludes the district court from conducting an appellate review of "cases brought by state-court losers

---

[6] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The docket of the State Bar Court is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236m 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).  Therefore, judicial notice is taken of the docket entries in Case No. 07-O-11955 before the State Bar Court.

1   complaining of injuries caused by state-court judgments rendered before the district court proceeding

2   commenced").

3   **H.      "Doe" Defendants**

4          Generally, "Doe" defendants are disfavored in the Ninth Circuit.  *Gillespie v. Civiletti*, 629

5   F.2d 637, 642 (9th Cir. 1980); *see also Clark v. Rolling Hills Casino*, 2010 U.S. Dist. LEXIS 55087, at

6   *9 (E.D. Cal. May 5, 2010).  However, when the identities of defendants are not known, "the plaintiff

7   should be given an opportunity through discovery to identify the unknown defendants, unless it is

8   clear that discovery would not uncover the identities, or that the complaint would be dismissed on

9   other grounds."  *Gillespie*, 629 F.2d at 642.

10          Plaintiff names a number of "Doe" defendants in his complaint, including "State Bar

11   Employees and Attorneys 1-10," State Bar Judges "11 through 15," and "Does 1-15."  (Doc. 1 at 1).

12   Although Plaintiff identifies where the Doe defendants work and in what capacity, he fails to identify

13   individuals among these defendants, and demonstrate how individuals acted in a manner that caused a

14   violation of his rights.  Plaintiff is required to allege specifically how each defendant—including Doe

15   Defendants—violated his rights, and link each defendant's actions to the violation of his rights.  *See*

16   *West*, 487 U.S. at 28; *Johnson*, 588 F.2d at 742.

17          Significantly, as discussed above, Plaintiff failed to state cognizable claims. Consequently, he

18   should not be permitted an opportunity to identify the unknown defendants.  Accordingly, the "Doe"

19   Defendants are **DISMISSED**.

20   **I.      Federal Rule of Civil Procedure 18(a)**

21          Under the Federal Rules of Civil Procedure, claims must be related, and be based on the same

22   precipitating event, or a series of related events alleged against the same defendant.  *See Fed.R.Civ.P.*

23   18(a).  The Seventh Circuit explained, "[M]ultiple claims against a single party are fine, but Claim A

24   against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated

25   claims against different defendants belong in different suits. . ."  *George v. Smith*, 507 F.3d 605, 607

26   (7th Cir. 2007).

27          Plaintiff attempts, unsuccessfully, to link all defendants through a claim of conspiracy.  As

28   discussed above, there are no factual allegations supporting this claim.  Plaintiff's claims related to his

arrest in 2010 are not related to his claims against the State Bar.  The disciplinary action before the State Bar was initiated due to representations Plaintiff made to a court in 2007.  (Doc. 1 at 20).  His arrest in 2010 had nothing to do with the representations made to the court.  Accordingly, the claims are not based upon the same precipitating event, and it is not proper for all the claims to be raised in one action.  Nonetheless, Plaintiff has failed to state a cognizable claim up which relief can be granted against any of the defendants.

## J.      Failure to Comply with Rule 8

Plaintiff has failed comply with Rule 8(a) and (d) of the Federal Rules of Civil Procedure, which require "a **short and plain statement** of the claim showing that the pleader is entitled to relief" and each allegation to "be **simple, concise, and direct**." (emphasis added).  Plaintiff's complaint, which contains 90 paragraphs of allegations, a memorandum of points and authorities and evidentiary exhibits does not satisfy these requirements.  The Ninth Circuit explained:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. . . .
>
> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit [and] then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

*McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming district court's dismissal of the complaint for violation of Rule 8 and failure to comply with court orders); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (addressing dismissals for overly lengthy complaints and observing that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations").  Plaintiff's complaint falls within the class of complaints described by the Ninth Circuit in *McHenry* and *Cafassco*, and he is admonished to comply with Rule 8.

## VI.     CONCLUSION AND ORDER

As discussed above, Plaintiff's fails to state a cognizable claim, and his compliant suffers from a significant number of deficiencies.  Nevertheless, Plaintiff will be granted leave to amend the complaint. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"); *Lopez v Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (dismissal for failure to state a claim is proper only where it is obvious the plaintiff cannot prevail on the facts alleged and that an opportunity to amend would be futile).

The amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint."  Plaintiff is advised that an amended complaint supersedes all previously filed complaints.  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Thus, once Plaintiff files a First Amended Complaint, this no longer serves any function in the case.  Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King*, 814 F.2d at 567 (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord. Forsyth*, 114 F.3d at 1474.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.     Plaintiff's Complaint is **DISMISSED with leave to amend**;

2.     Within twenty-one days from the date of service of this order, Plaintiff **SHALL** file an amended complaint curing the deficiencies identified by the Court in this order; and

3.     If Plaintiff fails to comply with this order, the action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   __July 27, 2012__                      _____/s/ Jennifer L. Thurston__
                                                                     UNITED STATES MAGISTRATE JUDGE

22