UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ROBERT E. DOWD, | ) | Case No.: 1:12-cv-01063 - LJO - JLT |
|---|---|---|
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATIONS DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
| v. | ) ) | |
| COUNTY OF KERN, et al., | ) ) | (Doc. 6) |
| Defendants. | ) ) | |

Robert Dowd ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this action initiated on June 29, 2012. The Court dismissed Plaintiff's complaint with leave to amend on July 27, 2012. (Doc. 4). Plaintiff filed his First Amended Complaint on August 21, 2012 (Doc. 6), which is now before the Court for screening pursuant to 28 U.S.C § 1915(a)-(b).[1]

For the followings reasons, the Court recommends Plaintiff's complaint be **DISMISSED WITHOUT LEAVE TO AMEND**.

I. **Pleading Standards**

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short

---

[1] When an individual is proceeding *in forma pauperis*, the Court is required to review the complaint and identify "cognizable claims." *See* 28 U.S.C § 1915(a)-(b). The Court must dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

1

and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to give the defendant fair notice and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent that deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**II.     Plaintiff's Allegations**

Plaintiff reports he was arrested by a member of the Kern County Sheriff's Department in May 2009. (Doc. 6 at 9). According to Plaintiff, he was held in custody while the Deputy who arrested

2

him spoke with a superior officer, Sgt. Scott Jelletich. *Id.* Plaintiff contends he heard Sgt. Jelletich say, "We cannot justify what we have done." *Id.* Thereafter, Plaintiff was released from custody. *Id.*

Plaintiff alleges he was approached by a representative of Kern County Animal Control ("Animal Control") in January 2010, and was informed there had been reports about the condition of his dog "Taft." (Doc. 6 at 12). The Animal Control officer and Plaintiff agreed to have Taft evaluated by a veterinarian, and on February 26, 2010, Dr. Bryan Jensen completed an evaluation.[2] *Id.*

Plaintiff alleges he was approached by Jayson Smith, another representative Animal Control regarding Taft on June 30, 2010. (Doc. 6 at 13). Mr. Smith informed Plaintiff he had not received the report of Dr. Jensen. *Id.* As a result, Plaintiff alleges he had a copy of the report delivered to Kern County Animal Control Shelter that day. *Id.* However, on July 1, 2010, Mr. Smith returned to the property. *Id.* According to Plaintiff, Mr. Smith contacted the Kern County Sheriff's Department, and Deputy Jaime Alarcon arrived in response to Mr. Smith's call. *Id.* at 14. At the time Deputy Alarcon arrived, Plaintiff contends he was cutting vegetables and had "a short $.50 metallic knife with a rounded point in his right hand which [sic] the short width blade approximately 2 and one half inches long." *Id.*[3] Plaintiff reports that as he approached the deputy, "the officer ordered [him] to drop the knife" and he did so. *Id.* at 14. Plaintiff asserts defendants Scott Jelletich and Sgt. Metter arrived immediately after he was ordered to drop the knife. *Id.* The officers arrested Plaintiff for "assault with a deadly weapon, animal cruelty and disobedience of a peace officer in the performance of his duties." *Id.* at 15.

According to Plaintiff, the officers "knew or should have known" Plaintiff had not abused Taft, had not assaulted an officer with a deadly weapon, and "that in failing to produce his driver's license he had not interfered with a peace officer in the performance of his duties." (Doc. 6 at 15). However, Plaintiff was convicted of a violation of California Penal Code Section 148,[4] and fined $100. *Id.* at 16.

Plaintiff contends the State Bar of California ("State Bar") and Kern County District Attorney's Office communicated throughout "the time [Plaintiff] was waiting and preparing for the

---

[2] Dr. Jensen reported he discussed euthanasia with Plaintiff, which was declined. (Doc. 1 at 34). Dr. Jensen opined: "The owner takes care of the dog, but he's not healthy, is happy. Neglect? Probably not. No sign of abuse. Dog would be a good candidate for a cart." *Id.*

[3] Previously, Plaintiff alleged the blade was "approximately 3 and one half inches" in length. (Doc. 1 at 10).

[4] Cal. Pen. Code § 148 governs actions which qualify as resisting officers in discharge of their duties.

trial." (Doc. 6 at 27). Plaintiff reports the State Bar was "activity and aggressively participating in this act to terminate [his] right to practice law, by virtue of the 2009 and then the 2010 arrest then charges for criminal conduct and because [his] approach to practice of law was that justice should not cost . . ." *Id.* at 28.

In May 2010, Plaintiff "learned that he would be charged with misconduct" by the State Bar due to a signature that appeared upon a declaration he filed in a civil action. (Doc. 6 at 24). Plaintiff explained that in 2007, he filed a declaration that bore his name on a signature line, but was signed by his assistant. *Id.* at 24-25. Although Plaintiff "informed the court that the signature was made with his direct authority," the declaration was stricken because he had not, in fact, been the one to sign. *Id.* at 24. Plaintiff asserts Judge Donald F. Miles presided over the trial before the State Bar proceedings, and issued an opinion, finding Plaintiff "did intend to deceive a judge." *Id.* at 25. Plaintiff contends Judges Miles failed "to consider and follow the law," and analogized Plaintiff's case to those "which were factually dissimilar." *Id.* The State Bar prosecutor, Jean Cha, recommended a suspension of 90 days, and the recommendation was adopted by Judge Miles. *Id.* at 26.

The ruling of Judge Miles was affirmed by the State Bar Appellate Court. (Doc. 6 at 29). In addition, Plaintiff asserts the State Bar was awarded costs of $13,000.00, which must be paid before he may return to the practice of law. *Id.* at 27. Plaintiff reports that his right to practice law was terminated in November 2011. *Id.* at 33.

### III.     Discussion and Analysis

Based upon the above facts, Plaintiff alleges violations of his civil rights, and conspiracy. (Doc. 6 at 31-35). Plaintiff identifies the following defendants in the action: Kern County; Kern County Sheriff's Department; Kern County Animal Control; Jayson Smith; Deputy Sheriff Jaime Alarcon; Sheriff Sergeant Scott Jelletich; Sherriff Sergeant Mettler; the California State Bar; Jean Cha; Donald F. Miles, Judge for the California State Bar Court; P.J. Remke, California State Bar Appellate Justice; and J. Epstein, California State Bar Appellate Justice; a "John Doe" attorney for the California State Bar; and several other "Doe" defendants (collectively, "Defendants"). (Doc. 6 at 1).

A. **First Cause of Action: "Violation of Civil Rights"**[5]

Plaintiff states defendants Smith, Alacron, Mettler, and Jelletich have violated his constitutional civil rights pursuant. (Doc. 6 at 31). Specifically, Plaintiff contends these defendants deprived him of his liberty by "arresting him and charging him with crimes which the Deputies knew that he had not committed and forcing him to pay bail, and forcing him to stand jury trial on charges which were created out of malice, ill will rather than an objective assessment of the facts." (Doc. 6 at 31). Thus, Plaintiff asserts the defendants lacked probable cause for his arrest.

Significantly, because Plaintiff's arrest resulted in a criminal conviction, his claims for a wrongful arrest are barred. In *Heck v. Humprhey*, the Supreme Court, addressing a claim brought pursuant to 42 U.S.C. § 1983, held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment," the plaintiff must demonstrate the conviction has been invalidated. *Id.*, 512 U.S. 486-87 (1994). The Ninth Circuit explained that under *Heck*, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

Consequently, the Ninth Circuit has determined that *Heck* barred a plaintiff's claims of wrongful arrest, malicious prosecution, and conspiracy among police officers to bring false charges where the plaintiff was convicted of crimes for which he was arrested. *Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006). Likewise, a plaintiff's claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges were barred by *Heck* after the plaintiff entered a guilty plea. *Smithart*, 79 F.3d at 952.

In this case, to succeed on his claim, Plaintiff would have to demonstrate there was no probable cause to arrest him. *See George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992). A judgment in favor of Plaintiff on the claims "would necessarily imply the invalidity of his conviction." *See Heck*, 512 U.S. at 487. Similar to the plaintiffs in *Guerrero* and *Smithart*, Plaintiff has not alleged

---

[5] Although Plaintiff does not specifically identify the provision law under which he seeks relief for violations of his civil rights, he quotes 42 U.S.C. §1983 in the relevant section of his First Amended Complaint.

his conviction has already been invalidated.[6]  Accordingly, *Heck* bars his claims regarding the propriety of his arrest by defendants Smith, Alacron, Mettler, and Jelletich.  Therefore, the Court recommends this cause of action be **DISMISSED**.

### B. Second Cause of Action:  Failure to Supervise

Plaintiff contends defendants Mettler, and Jelletich refused or neglected to properly supervise other officers.  (Doc. 6 at 31).  Therefore, Plaintiff seeks to state a claim pursuant to 42 U.S.C.§ 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  An individual may bring an action for the deprivation of civil rights pursuant to Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.  To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 U.S. Dist. LEXIS 53946, at *3 (E.D. Cal. Apr. 17, 2012).  An entity or individual deprives another of

---

[6] In addition, the Court takes judicial notice of the Kern County Superior Court docket in *People v.* Dowd, case number LM094411A, in which the conviction for violation of Penal Code section 148(A)(1), remains in force. The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The docket of the State Bar Court is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236m 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *See Puckett v. Cororan Prison- CDCR*, 2012 U.S. Dist. LEXIS 52572, at *7 (E.D. Cal. Apr. 13, 2012).

Significantly, the supervisor of an individual who allegedly violated a plaintiff's constitutional rights is not made liable for the violation simply by virtue of that role. *Monell, Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In addition, supervisor liability exists "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885, F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987) (internal quotation marks omitted). A causal link between a supervisor and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).

Here, Plaintiff asserts "Sgts. Mettler and Jelletich [sic] . . . knowingly not only supervised the incident [of his arrest] but . . . knowingly and willfully failed to supervise and control Defendant Deputy Sheriff." (Doc. 6 at 31). However, Plaintiff has not stated a cognizable claim for a constitutional violation by the subordinate officers, or stated facts supporting a claim that defendants Mettler and Jelletich participated in or condoned an act that violated Plaintiff's constitutional rights. As a result, Plaintiff has not stated a cognizable claim against Sgts. Mettler and Jelletich.

Because Plaintiff fails to state a cognizable claim for a failure to supervise under Section 1983, the Court recommends this cause of action be **DISMISSED**.

**C.    Third Cause of Action: Conspiracy and Failure to Prevent Conspiracy**

Plaintiff contends Defendants engaged in a conspiracy to violate his civil rights in violation of Section 1985. (Doc. 6 at 32). A claim of conspiracy requires a plaintiff to "demonstrate the existence

of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). In addition, a plaintiff must show an "actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-42 (9th Cir. 1989).

In this case, Plaintiff asserts Defendants entered "a unified effort to deny [him] of his right to practice law." (Doc. 6 at 33). However, Plaintiff has not alleged facts demonstrating a meeting of minds amongst Defendants. Plaintiff fails to meet his burden to identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). In addition, "[t]here is no fundamental right to practice law." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990); *see also Paciulan v. George*, 38 F. Supp. 2d 1128, 1138 (N.D. Cal. 1999) (rejecting the plaintiffs' argument that the right to practice law is "constitutionally protected"). Therefore, Plaintiff has failed to state a cognizable claim for conspiracy, and the Court recommends this cause of action be **DISMISSED**.

Likewise, Plaintiff has not stated a claim for a failure to prevent a conspiracy under Section 1986,[7] because he has not shown such conspiracy existed. *See Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985) ("a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985"). Accordingly, it is recommended that Plaintiff's claim for a violation of Section 1986 be **DISMISSED**.

### D. Requested relief and the *Rooker-Feldman* Doctrine

Plaintiff contends he was "wrongly found amenable to discipline by the State Bar." (Doc. 6 at 34.) Therefore, Plaintiff requests the Court "order that he should be immediately reinstated to the practice of law." *Id.* at 35.

---

[7] Although Plaintiff does not identify a separate cause of action for a failure to prevent a conspiracy, he asserts Defendants were "subject to" 42 U.S.C. 1986. (Doc. 6 at 10, ¶ 23).

Although Plaintiff challenges the determination of the State Bar, the ultimate decision to suspend Plaintiff from the practice of law was rendered by the California Supreme Court. The State Bar has limited power and may only make disciplinary recommendations because the State Bar Court "is not itself a judicial court established by article IV" of the California Constitution. *In re Rose*, 22 Cal.4th 430, 438 (2000). The California Supreme Court explained:

> The State Bar Court Hearing Department (Hearing Department) conducts evidentiary hearings on the merits in disciplinary matters. (Rules Proc. of State Bar (hereafter, Rules of Procedure), rules 2.60, 3.16.) An attorney charged with misconduct is entitled to receive reasonable notice, to conduct discovery, to have a reasonable opportunity to defend against the charge by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. ([Cal Bus. & Prof. Code] § 6085.) The Hearing Department renders a written decision recommending whether the attorney should be disciplined. (Rules Proc., rule 220.) Any disciplinary decision of the Hearing Department is reviewable by the State Bar Court Review Department (Review Department) at the request of the attorney or the State Bar. (*Id.*, rule 301(a).) In such a review proceeding, the matter is fully briefed, and the parties are given an opportunity for oral argument. (*Id.*, rules 302-304.) The Review Department independently reviews the record, files a written opinion, and may adopt findings, conclusions, and a decision or recommendation at variance with those of the Hearing Department. (*Id.*, rule 305.) A recommendation of suspension or disbarment, and the accompanying record, is transmitted to this court after the State Bar Court's decision becomes final. ([Cal Bus. & Prof. Code]§ 6081; Rules Proc., rule 250.)

*In re Rose,* 22 Cal. 4th at 439. Consequently, the recommendations of the State Bar are advisory only. *Id.* at 444. "The final determination rests with [the California Supreme Court], and its powers in that regard are plenary and its judgment conclusive." *Id.* (quoting *In re Lacey*, 11 Cal. 2d 699, 701 (1938)).

Significantly, the California Supreme Court issued an order regarding the recommendation of the State Bar for Plaintiff's disciplinary on October 19, 2011.[8] Under the *Rooker-Feldman* doctrine, Plaintiff may not seek appellate review in federal court of the disciplinary decision rendered by the state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Ninth Circuit explained,

> Typically, the *Rooker Feldman* doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's

---

[8] For the same reasons set forth above, the Court takes judicial notice of the docket entries in Case No. 07-O-11955 before the State Bar Court.

federal rights. *Doe v. Mann*, 415 F.3d 1038, 1041-42 (9th Cir. 2005). In addition, a complaint in federal court must be dismissed for lack of subject matter jurisdiction if the "claims raised are . . . 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483, 485).

Therefore, to the extent Plaintiff seeks review of the state court decision to suspend him from practice, this Court lacks jurisdiction to offer relief from the judgment entered by the state. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (The *Rooker-Feldman* doctrine precludes the district court from conducting an appellate review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced").

### IV.    Findings and Recommendations

As discussed above, Plaintiffs fails to state a cognizable claim against Defendants. Because Plaintiff fails to state facts supporting the elements of his claims, the Court declines to address an immunity that may be available to the defendants who have been identified in the First Amended Complaint. It does not appear the deficiencies can be cured by amendment, and granting Plaintiff further leave to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (dismissal for failure to state a claim is proper where it is obvious the plaintiff cannot prevail on the facts alleged and that an opportunity to amend would be futile).

Accordingly, **IT IS HEREBY RECOMMENDED:**

1. Plaintiff's complaint be **DISMISSED WITHOUT LEAVE TO AMEND**; and
2. The Clerk of Court be directed to close this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **August 27, 2012**                         **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE